IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

RENASANT BANK, INC.,         *

    Plaintiff,           *

vs.                      *       CASE NO. 3:11-CV-143 (CDL)

EARTH RESOURCES OF FRANKLIN *
COUNTY, LLC, CHARLES C.
DINSMORE, and JOHN F. *
SMITHGALL,

                      *

    Defendants.

                      *

O R D E R

In this action, Plaintiff Renasant Bank, Inc. ("Renasant") seeks to recover principal, interest, and expenses of collection on loans made to Defendant Earth Resources of Franklin County, LLC ("ERFC"), which were personally guaranteed by Defendant John F. Smithgall ("Smithgall"). ERFC and Smithgall (collectively, "Defendants") assert various defenses which are based on their primary contention that some of the draws on the loans were not properly authorized. Renasant and Defendants have filed motions for summary judgment.

For the following reasons, the Court denies Defendants' motion for summary judgment (ECF No. 34) and grants Renasant's motion (ECF No. 28) in part, finding that the undisputed material facts establish Defendants' liability for the principal amounts of the loans. The present record, however, is unclear

as to the amounts owed for interest and expenses of collection, and the Court directs Renasant to supplement its motion for summary judgment by presenting evidence establishing with reasonable certainty the amounts of interest and litigation expenses owed, including a comprehensible explanation, with citation to the record, as to how the amounts were calculated. That supplement shall be filed within 21 days of today's order. Defendants shall have 21 days to respond to that supplement to Renasant's motion for summary judgment.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material* fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

FACTUAL BACKGROUND

The following facts are undisputed for purposes of summary judgment unless otherwise noted.   Renasant is the successor-in-interest to Crescent Bank and Trust Company ("Crescent").

This litigation arises from the construction and operation of a landfill in Franklin County.   To finance the project, ERFC secured financing from Crescent.   During the time of the financing, ERFC was a limited liability company with Charles C. Dinsmore ("Dinsmore"), then later Smithgall, as the managing member.

On March 18, 2008, five transactions occurred relating to ERFC, Smithgall, and Crescent.   First, Dinsmore, on behalf of and as managing member of ERFC, executed a promissory note in the principal sum of $6,000,000.00 due and payable to Crescent. Smithgall Dep. Ex. 34, Mar. 18, 2008 Promissory Note, ECF No. 45-35.   The March 18, 2008 Note included approximately $4,000,000.00 that had already been disbursed to ERFC and contemplated additional draws of up to $2,000,000.00.   *Id.*; Smithgall Dep. 122:25-126:7, Apr. 18, 2012, ECF No. 45.   The Note also included a reference to an "ATTACHED EXHIBIT 'A'" which was "incorporated" into the Note.   Mar. 18, 2008 Promissory Note, ECF No. 45-35 at 1.   Exhibit A lists dollar amounts for projected interest expenses, post closure expenses, operational expenses, taxes, "Amount available to draw for

payment to John F. Smithgall," and "Funds available for discretionary use" adding up to $2,000,000.00. Mar. 18, 2008 Promissory Note Ex. A, Conditions, ECF No. 45-35 at 3 [hereinafter Exhibit A]. Exhibit A was signed by Dinsmore, Smithgall, and Tony Stancil, the loan officer for the ERFC account. *Id.*

Second, Smithgall executed a personal guaranty to Crescent, guaranteeing payment upon the maturity of the March 18, 2008 Note in the principal amount of $2,000,000.00. Smithgall Dep. Ex. 38, Mar. 18, 2008 Personal Guaranty, ECF No. 45-39 at 1. Third, a previously recorded deed to secure debt was modified to reflect a principal of $6,000,000.00 owed to Crescent and an unlimited maximum obligation amount. Smithgall Dep. Ex. 35, Security Deed and Agreement, ECF No. 45-36 at 4. Fourth, Dinsmore, on behalf of and as managing member of ERFC, also executed a Commercial Security Agreement.[1] Smithgall Dep. Ex. 36, Mar. 18, 2008 Commercial Security Agreement, ECF No. 45-37. The March 18, 2008 Commercial Security Agreement is secured by the Security Deed and a UCC Financing Statement.[2] Smithgall Dep.

---

[1] Defendants attempt to dispute these facts. Defs.' Resp. to Pl.'s Statement of Undisputed Material Facts [hereinafter Defs.' Resp. to Pl.'s SUMF] ¶ 6, ECF No. 48. Defendants admitted these facts in their Answer, and they have not attempted to amend their Answer. Compl. ¶ 12, ECF No. 1; Answer ¶ 12, ECF No. 9. Therefore, Defendants are not permitted to dispute these facts.

[2] Defendants attempt to dispute these facts. Defs.' Resp. to Pl.'s SUMF ¶¶ 7-8. Defendants admitted these facts in their Answer and may not dispute them. Compl. ¶¶ 13-14; Answer ¶¶ 13-14.

Ex. 28, UCC Financing Statement, ECF No. 45-29. Lastly, Dinsmore executed a pledge agreement relating to pledging and assigning all of his rights to and ownership interest in ERFC as managing member to Smithgall.[3]

On June 10, 2009, ERFC defaulted on the March 18, 2008 Note by failing to pay the principal amount owing of $6,000,000.00 when due and payable.[4] ERFC's operating agreement was amended on June 27, 2009 to reflect the transfer of ownership of ERFC from Dinsmore to Smithgall as of June 11, 2009. Amendment to the Operating Agreement, ECF No. 45-43.

On July 30, 2009, four transactions occurred relating to ERFC, Smithgall, and Crescent. First, Smithgall, on behalf of and as managing member of ERFC, executed a renewed promissory note in the principal sum of $5,787,478.60 due and payable to Crescent. Smithgall Dep. Ex. 44, July 30, 2009 Promissory Note, ECF No. 45-45 at 1. The July 30, 2009 Note does not contain an

---

[3] The parties did not point the Court to a copy of the pledge agreement itself. The parties did point to letters which establish that Dinsmore executed it on March 18, 2008. Smithgall Dep. Ex. 41, Letter from J. Smithgall to C. Dinsmore (June 26, 2009), ECF No. 45-42; Smithgall Dep. Ex. 43, Letter from J. Smithgall to C. Dinsmore (July 8, 2009), ECF No. 45-44. The letters reveal the general nature of the pledge agreement, but not whether the agreement actually transferred ownership interest on that date or merely pledged ownership interest as security in the event of a default on the loan. *But see* Smithgall Dep. Ex. 42, Amendment to the Operating Agreement, ECF No. 45-43 at 1 (reflecting the transfer of ownership from Dinsmore to Smithgall as of the day after ERFC defaulted on the loan).

[4] Defendants attempt to dispute these facts. Defs.' Resp. to Pl.'s SUMF ¶ 10. Defendants admitted these facts in their Answer and may not dispute them. Compl. ¶ 18; Answer ¶ 18.

explicit reference or attachment to Exhibit A.  *Id.* at 1-2.
Second, Smithgall executed a continuing personal guaranty to
Crescent, guaranteeing payment upon the maturity of the July 30,
2009 Note in the principal amount of $2,000,000.00.  Smithgall
Dep. Ex. 46, July 30, 2009 Personal Guaranty, ECF No. 45-47 at
1.  Third, a previously recorded deed to secure debt was
modified to reflect a principal of $5,787,478.60 owed to
Crescent and an unlimited maximum obligation amount.  Smithgall
Dep. Ex. 47, Modification of Deed to Secure Debt, ECF No. 45-48.
Fourth, Smithgall, on behalf of and as managing member of ERFC,
also executed a Commercial Security Agreement.[5]  Smithgall Dep.
Ex. 45, July 30, 2009 Commercial Security Agreement, ECF No. 45-
46.  The July 30, 2009 Commercial Security Agreement is secured
by the Modification of Deed to Secure Debt and a UCC Financing
Statement.[6]  Smithgall Dep. Ex. 28, UCC Financing Statement, ECF
No. 45-29.

On October 10, 2009, Renasant made a principal advance to
ERFC in the amount of $627.74, bringing the total principal owed
under the loan to $5,788,106.34.[7]  Defendants have failed and

---

[5] Defendants attempt to dispute these facts.  Defs.' Resp. to Pl.'s
SUMF ¶ 16.  Defendants admitted these facts in their Answer and may
not dispute them.  Compl. ¶ 25; Answer ¶ 25.
[6] Defendants attempt to dispute these facts.  Defs.' Resp. to Pl.'s
SUMF ¶¶ 17-18.  Defendants admitted these facts in their Answer and
may not dispute them.  Compl. ¶¶ 26-27; Answer ¶¶ 26-27.
[7] Defendants attempt to dispute the principal amount owed.  Defs.'
Resp. to Pl.'s SUMF ¶ 19.  Defendants admitted this figure in their
Answer and may not dispute it.  Compl. ¶ 30; Answer ¶ 30.

refused to pay any part of the principal, late charges, and interest on the July 30, 2009 Note.[8]   Smithgall Dep. Ex. 51, Letter from F. Hallman to ERFC (Feb. 17, 2011), ECF No. 45-52 at 1.   On May 10, 2010, ERFC defaulted on the July 30, 2009 Note and the July 30, 2009 Commercial Security Agreement.[9]   In addition to the principal amount, the July 30, 2009 Note included obligations to pay interest, collection costs, and also attorneys' fees of "15 percent of the principal and interest then owed, plus court costs."[10]   July 30, 2009 Promissory Note, ECF No. 45-45 at 2.   Pursuant to the terms of the July 30, 2009 Personal Guaranty, Smithgall personally agreed to pay "a principal amount of $2,000,000 . . . plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs, and enforcement expenses referable thereto."   July 30, 2009 Personal Guaranty, ECF No. 45-47 at 1.

Renasant filed suit against ERFC, Smithgall, and Dinsmore. The Court entered default judgment against Dinsmore (ECF No.

---

[8] Defendants attempt to dispute these facts.   Defs.' Resp. to Pl.'s SUMF ¶ 21.   Defendants admitted these facts in their Answer and may not dispute them.   Compl. ¶ 34; Answer ¶ 34.
[9] Defendants attempt to dispute the defaults.   Defs.' Resp. to Pl.'s SUMF ¶¶ 20-22, 24-25.   Defendants admitted to the defaults in their Answer and may not dispute them.   Compl. ¶¶ 35, 42, 44; Answer ¶¶ 35, 42, 44.
[10] Defendants attempt to dispute these facts.   Defs.' Resp. to Pl.'s SUMF ¶ 23.   Defendants admitted these facts in their Answer and may not dispute them.   Compl. ¶ 41; Answer ¶ 41.

16).  Renasant moves for summary judgment, seeking $7,745,209.80
with $2,572.49 in interest accruing daily on the July 30, 2009
Note, $2,676,250.00 with $888.89 in interest accruing daily on
the July 30, 2009 Personal Guaranty, and attorneys' fees of
$1,161,781.47 from Defendants jointly and severally.  Mem. of
Law in Supp. of Pl.'s Mot. for Summ. J. 18, ECF No. 28-1.
Defendants move for summary judgment, claiming that their
obligations have been excused or discharged.  Defs.' Mot. for
Summ. J. 1, ECF No. 34.

DISCUSSION

## I.    Enforcement of the Promissory Note

Under Georgia law, it is well established that a plaintiff
suing to enforce a promissory note "establishes a prima facie
case by producing the note and showing that it was executed.
Once that prima facie case has been made, the plaintiff is
entitled to judgment as a matter of law unless the defendant can
establish a defense." *Trendmark Homes, Inc. v. Bank of N. Ga.*,
314 Ga. App. 886, 887, 726 S.E.2d 138, 139 (2012) (internal
quotation marks omitted).  Renasant produced the July 30, 2009
Note, and it is undisputed that it was validly executed by
Smithgall on behalf of ERFC as managing member.  The issues to
be resolved for purposes of deciding the pending summary
judgment motions are whether Defendants have established any
defenses as a matter of law for purposes of their motion and/or

whether they have at least demonstrated the existence of a genuine factual dispute as to those defenses in order to avoid summary judgment in favor of Renasant. *See Big Sandy P'ship v. Branch Banking & Trust Co.*, 313 Ga. App. 871, 872, 723 S.E.2d 82, 84 (2012) (stating that after plaintiff established prima facie case for recovery on promissory notes, nonmoving parties "were required to come forward with or point to specific facts in the record").

Defendants admit ERFC has defaulted on the loan by its failure to pay. Compl. ¶ 18; Answer ¶ 18. Defendants allege that Crescent made disbursements on the loan that violated agreements restricting how the funds could be used, purportedly reflected in Exhibit A of the March 18, 2008 Note. Defendants argue that this violation amounted to a material breach that excuses ERFC of its obligations under the July 30, 2009 Note. Alternatively, Defendants argue that ERFC's obligations should at least be reduced by the amount of improper disbursements along with corresponding interest. Below is a list of the alleged improper disbursements:

1. May 18, 2008: $400,000.00 disbursement to ERFC from discretionary funds. Stancil Dep. 28:3-12, ECF No. 38; Woodall Dep. 28:7-29:13, ECF No. 40; Defs.' Mot. for Summ. J. Ex. 3, Mar. 19, 2008 Checking Deposit, ECF No. 34-1 at 10.

2. May 18, 2008: $367,373.82 disbursement to Eufala Corp. from discretionary funds. Defs.' Mot. for Summ. J. Ex. 3, Mar. 18, 2008 Loan Proceeds Check, ECF No. 34-1 at 11.

3. May 22, 2008: $52,250.10 for old invoices. Woodall Dep. 23:14-24:5; Defs.' Mot. for Summ. J. Ex. 6, Fax from V. Prickett to S. Woodall (May 13, 2008) Attach., Various Invoices, ECF No. 34-1 at 34-33.

4. April 2, 2008: $58,660.57 for Dinsmore Grading 401(k) contributions. Woodall Dep. 18:13-20:8; Defs.' Mot. for Summ. J. Ex. 4, Email from V. Prickett to T. Black (Apr. 2, 2008) Attach., Dinsmore Grading 401(k) Report, ECF No. 34-1 at 14-15.

5. April 29, 2008: $6,960.82 and $2,427.69 for interest on note to Fort Lamar, LLC. Woodall Dep. 21:11-22:18; Defs.' Mot. for Summ. J. Ex. 5, Fax from V. Prickett to S. Woodall (Apr. 21, 2008) Attach., Mar. 19, 2008 Loan Statements, ECF No. 34-1 at 20-22.

6. July 8, 2008: $11,468.86 for interest on note to Fort Lamar, LLC. Defs.' Mot. for Summ. J. Ex. 7, Fax from V. Prickett to S. Woodall (July 7, 2008) Attach., June 18, 2008 Loan Statements, ECF No. 34-2 at 2-4.

7. July 22, 2008: $31,125.00 for old invoices. Defs.' Mot. for Summ. J. Ex. 8, Fax from V. Prickett to S. Woodall

(July 22, 2008) Attach., Atlantic Coast Invoices, ECF No. 34-2 at 6-9.

8. October 6, 2008: $11,041.09 for interest on note to Fort Lamar, LLC. Defs.' Mot. for Summ. J. Ex. 9, Fax from V. Prickett to S. Woodall (Oct. 6, 2008) Attach., Sept. 18, 2008 Loan Statements, ECF No. 34-2 at 11-13.

9. January 7, 2009: $9,185.52 for interest on note to Fort Lamar, LLC. Defs.' Mot. for Summ. J. Ex. 10, Fax from V. Prickett to S. Woodall (Jan. 5, 2009) Attach., Dec. 19, 2008 Loan Statements, ECF No. 34-2 at 16-18.

10. April 3, 2009: $7,893.08 for interest on note to Fort Lamar, LLC. Defs.' Mot. for Summ. J. Ex. 11, Fax from V. Prickett to S. Woodall (Apr. 1, 2009) Attach., Mar. 19, 2009 Loan Statements, ECF No. 34-2 at 20-22.

11. May 18, 2009: $100,000.00 as per telephonic request. Stancil Dep. 38:12-18; Woodall Dep. 30:1-31:19; Defs.' Mot. for Summ. J. Ex. 12, Email from K. Whitmore to S. Woodall (May 18, 2009) Attach., Fax from S. Dinsmore to S. Woodall (May 15, 2009), ECF No. 34-2 at 26, 24.

Renasant responds that ERFC cannot be excused from performing its obligations because the disbursements do not violate the terms of the July 30, 2009 Note or the terms of Exhibit A. Renasant also contends that ERFC has ratified the alleged improper disbursements through the actions of Smithgall.

11

As explained below, the Court finds that Defendants failed to point to any facts that would be material to establishing a valid defense.  Thus, Renasant is entitled to summary judgment as to ERFC's liability under the July 30, 2009 Note.[11]

### A.  Material Breach

Defendants contend that Crescent's disbursements materially breached Exhibit A to the March 18, 2008 Note and excuse ERFC from performing the obligations of the July 30, 2009 Note. Renasant argues that Exhibit A does not apply to the July 30, 2009 Note because that Note does not contain "a 'similar reference to a disbursement authorization'" as contained in the March 18, 2008 Note.  Pl.'s Resp. to Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶ 15, ECF No. 51.  Defendants argue that the reference "SEE SEPARATE ITEMIZATION &/OR DISBURSEMENT AUTHORIZATION" in the July 30, 2009 Note is enough to incorporate Exhibit A.  July 30, 2009 Promissory Note, ECF No. 45-45 at 1.  The parties cite no case law on this issue of contract construction, which is a question of law for the Court.  First, the Court must determine "whether the language of the contract is clear and unambiguous.

---

[11] Renasant provides no argument or evidence to establish why Smithgall would be jointly and severally liable under the July 30, 2009 Note. Although Smithgall executed the Note on behalf of ERFC as managing member, this act alone does not constitute an agreement to personal liability on the Note.  *See* O.C.G.A. § 14-11-303 (stating that a member of a limited liability corporation is not liable for contractual debts, obligations, or liabilities of the LLC unless he or she agrees to be obligated personally in a written agreement).

If so, the contract is enforced according to its plain terms, and the contract alone is looked to for meaning." *Bd. of Comm'rs of Crisp Cnty. v. City Comm'rs of City of Cordele*, 315 Ga. App. 696, 699, 727 S.E.2d 524, 527 (2012). If the court determines that the language is ambiguous, the court must apply the rules of contract construction to resolve the ambiguity. *Id.* If ambiguity remains after performing these steps, a jury should resolve the issue of what the parties intended by the ambiguous language. *Id.*

Here, the face of the July 30, 2009 Note is ambiguous because it contains a reference to a separate document without naming or attaching it. Under the rules of construction, "it is well established that a court should avoid an interpretation of a contract which renders portions of the language of the contract meaningless." *Id.* at 701, 727 S.E.2d at 528 (internal quotation marks omitted). The Court should give meaning to this clause and ascertain to which separate document it refers. Defendants are correct that the reference "SEE SEPARATE ITEMIZATION &/OR DISBURSEMENT AUTHORIZATION" similarly appears on both the March 18, 2008 and July 30, 2009 Notes, but the March 18, 2008 Note also directly references Exhibit A in another section and attaches it as the last page. Mar. 18, 2008 Promissory Note, ECF No. 45-35 at 1; Exhibit A, ECF No. 45-35 at 3. Defendants have sufficiently pointed out an ambiguity in the

intended meaning of the quoted clause in the July 30, 2009 Note. This ambiguity is enough to create a fact dispute as to whether the July 30, 2009 Note incorporates Exhibit A of the March 18, 2008 Note. The disputed issue is not material, however, because Defendants failed to present sufficient evidence to show that Crescent materially breached the July 30, 2009 Note, even if that Note did incorporate Exhibit A from the March 18, 2008 Note.

The Court assumes for purposes of the pending motions that the July 30, 2009 Note incorporates Exhibit A. Defendants allege that Crescent breached Exhibit A by making disbursements from the additional $2,000,000.00 that were not "specifically related to the future operations of . . . ERFC," and without first verifying through underlying documentation the purpose of the draw requests. Defs.' Statement of Undisputed Material Facts in Supp. of Defs.' Mot. for Summ. J. ¶ 10, ECF No. 36. Renasant counters that such evidence imposes additional conditions beyond the clear language of the writing and is barred by the parol evidence rule.

It is well established that parol evidence cannot be considered to alter or vary the terms of a promissory note. *Trendmark*, 314 Ga. App. at 888, 726 S.E.2d at 140 ("The note being an unconditional promise, the contract is complete as written; parol evidence may not be used to impose conditions

14

which are not apparent from the face of the note.") (internal
quotation marks omitted).   The plain language of Exhibit A
allocates certain dollar amounts to various expenses, payments,
and taxes and lists the remainder as "Funds available for
discretionary use."   Exhibit A, ECF No. 45-35 at 3.   Defendants
point to evidence outside the four corners of the document to
impose requirements that such disbursements be specifically
related to only future operations and have documentation to that
effect.   *See, e.g.*, Smithgall Dep. 172:5-173:5, Apr. 18, 2012,
ECF No. 45 (mentioning oral representations about how the loan
funds would be spent); Smithgall Dep. Vol. 1 26:20-25, May 24,
2012, ECF No. 43 (discussing an "understanding" that the loan
funds were only for "funding operations for future betterment of
the landfill"); Stancil Dep. 39:1-16 (discussing how Crescent
"typically" and "customarily" received backup information for
the fund requests).   Defendants argue that this evidence merely
explains and does not modify the written agreement; however,
this evidence clearly imposes additional conditions that do not
fit the plain meaning of any of the language, including
"discretionary use."   The Court finds that such evidence is
barred by the parol evidence rule.   *See Brooks v. McCorkle*, 174
Ga. App. 132, 132, 329 S.E.2d 214, 215 (1985) (holding that
"parol evidence cannot be used to establish a valid defense to
[plaintiff]'s prima facie entitlement to judgment as a matter of

law" because it "cannot be used in order to inject conditions on the obligation which are not apparent from the face of the note") (internal quotation marks omitted).

Although Defendants present numerous documents on the disbursements alleged to be improper, they fail to point to any evidence showing that those disbursements do not fall within the "discretionary" language in the Note. To adopt Defendants' argument would require the Court to consider evidence beyond the four corners of the Note and impose obligations upon the parties which are different than those agreed to in the Note. *See* Smithgall Dep. 169:8-16, Apr. 18, 2012, ECF No. 45 (responding that there is no writing limiting discretion); *id.* at 173:24-174:15 (explaining that Smithgall did not have any writing making it Crescent's responsibility to investigate whether draws made under the discretion of an authorized representative were valid "from the perspective of the company"). Finding that the disputed disbursements were authorized under the plain and unambiguous terms of the March 18, 2008 Note, the Court concludes that Defendants have failed to present sufficient evidence to raise a factual dispute on the issue of whether Crescent's disbursements breached the July 30, 2009 Note. Moreover, the Court rejects Defendants' other excuses for ERFC's failure to honor its obligations under the Note. ERFC cannot avoid paying what it agreed to pay simply because its current

managing member now objects to the way that its former managing member used the loan proceeds.  Accordingly, the Court finds as a matter of law that ERFC has failed to establish a valid defense to this action.

B.   Ratification

Renasant argues that even if Crescent's acts somehow breached the July 30, 2009 Note, ERFC cannot establish a valid defense because Smithgall as managing member ratified the improper disbursements.[12]  While the record shows a dispute exists as to Smithgall's authority and knowledge at the time of the alleged improper disbursements,[13] Defendants have failed to create a factual dispute as to his role and knowledge when he renewed the loan by executing the July 30, 2009 Note.  Renasant contends that by renewing the loan, Smithgall ratified the disbursements and waived any defenses because he knew or should have known of any alleged improper disbursements before executing the documents as the sole owner and managing member of

---

[12]  The parties have not argued whether ERFC, by requesting the disbursements through its then managing member, has already waived any defense based on the alleged impropriety of these disbursements.

[13]  Renasant asserts that Smithgall was the true owner of ERFC as of March 18, 2008 pursuant to the pledge agreement.  The pledge agreement itself is not an exhibit in the record, but the Amendment to the Operating Agreement shows that Dinsmore acknowledged on June 27, 2009 that Dinsmore was currently the sole member and assigned his rights to Smithgall as of June 11, 2009.  Amendment to the Operating Agreement, ECF No. 45-43.  Renasant also asserts that Smithgall had knowledge of all the disbursements based on the fact that he received some of them.  Conversely, Defendants point to testimony that Smithgall did not have knowledge of the business's accounts or have access to disbursement records until "right before that renewal."  Smithgall Dep. Vol. 2 71:10-72:14, 76:8-12, May 24, 2012, ECF No. 44.

ERFC.   The parties cite no authority on the issue.   Under Georgia law, "renewal [of a note] cuts off all defenses of which the maker then had knowledge."   *NationsBank, N.A. (So.) v. Peavy*, 227 Ga. App. 137, 139, 488 S.E.2d 699, 702 (1997) (internal quotation marks omitted).   Smithgall admits that he received documentation on the disbursements in May or June of 2009 but he "didn't study it very hard at that time."   Smithgall Dep. 35:7-14, Apr. 18, 2012, ECF No. 45.   Nonetheless, Smithgall admits he willingly signed the July 30, 2009 Note and other related documents despite questioning the validity of the disbursements.   *See id.* at 137:6-19. ("Q: Did you at that time [July 30, 2009] question the validity of the debt that was owed? A: I questioned the validity of the disbursements, but I didn't have any choice.   I needed to renew this loan to protect my collateral.").   Smithgall also states he did not investigate the draws and their validity or demand that the bank produce more information on the draws before the renewal.   *Id.* at 177:19-25.

Defendants cite only to the fact that Smithgall stated that he did not have documentation on the disbursements in question until "right before that renewal."   Smithgall Dep. Vol. 2 76:8-12, May 24, 2012, ECF No. 44.   This evidence is insufficient to contradict Smithgall's own testimony, which establishes at a minimum that he had the opportunity to fully investigate the nature of the previous disbursements prior to executing the July

30, 2009 Note.   Based on the foregoing, the Court finds that ERFC waived any defense relating to the previous disbursements by executing the renewal.   For this independent reason, ERFC cannot establish a valid defense, and Renasant is entitled to summary judgment on ERFC's liability under the July 30, 2009 Note.

## II.  Enforcement of Smithgall's Personal Guaranty

Defendants argue that Smithgall is discharged from any obligation under the Personal Guaranty because of the alleged improper disbursements or alternatively that his obligation should be reduced by the amount of improper disbursements.   As previously explained, the alleged improper disbursements were authorized by the Note which Smithgall guaranteed up to $2,000,000.00.   Moreover, having the opportunity to fully investigate the nature of the previous disbursements, Smithgall nevertheless guaranteed the July 30, 2009 Note.   Although a guarantor may be discharged if a creditor increases his risk, exposes him to greater liability, or otherwise changes the nature or terms of the underlying obligation, O.C.G.A. §§ 10-7-21 to -22, the facts in this case do not support this defense. Accordingly, Defendants' failure to establish a defense to the guaranty as a matter of law authorizes summary judgment in favor of Renasant on its guaranty claim.

**III. Relief Sought**

Because Renasant proved ERFC's liability under the July 30, 2009 Note and Smithgall's liability under the July 30, 2009 Personal Guaranty, the Court finds that ERFC is liable for at least the principal amount of $5,788,106.34 under the promissory note and that Smithgall is liable for at least the principal amount of $2,000,000.00 under the personal guaranty. The remaining relief sought, including interest and expenses of collection, cannot be resolved based on the present record. Renasant's briefing has been unhelpful in reassuring the Court as to how it calculated the balance of $7,745,209.80 on the promissory note, $2,676,250.00 on the personal guaranty, and $1,161,781.47 for attorneys' fees. That evidence may be buried somewhere in the record, but the Court should not be put in the position of having to dig it out. Therefore, the Court requires Renasant to supplement its motion by providing a better explanation as to how those amounts for interest and cost of collection were calculated. The supplement shall be filed within 21 days of today's order. Defendants shall have 21 days to respond.

Finally, the Court notes that Defendants dispute that Smithgall is jointly and severally liable for the amount of attorneys' fees to be determined. The July 30, 2009 Personal Guaranty provides that the guarantor agrees to pay, in addition

to the principal and interest, "attorneys' fees, collection costs, and enforcement expenses" referred to in all other agreements evidencing the loan debt. July 30, 2009 Personal Guaranty, ECF No. 35-47 at 1. The Court finds that this obligation would include the July 30, 2009 Note, which measures attorneys' fees as 15% of the principal and interest plus court costs. July 30, 2009 Promissory Note, ECF No. 45-45 at 2. Accordingly, Smithgall is jointly and severally liable for those fees.

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 34) is denied. Renasant's motion (ECF No. 28) is granted to the extent that Defendants are liable for the principal in the amount of $5,788,106.34, with Smithgall's liability on the principal limited to $2,000,000.00. Regarding recovery of interest and costs of collection, including attorney's fees, Renasant shall file a supplement to its motion within 21 days of today's order describing in detail how those amounts were calculated, and Defendants shall have 21 days to respond.

IT IS SO ORDERED, this 17th day of October, 2012.

S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE